HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington non-profit corporation,<br><br>Plaintiff,<br>v.<br><br>JOEL SACKS, in his official capacity as Director of Washington State Department of Labor & Industries; HEATHER NORMOYLE, in her individual capacity; and ELIZABETH SMITH, in her individual capacity,<br><br>Defendant. | CASE NO. 3:19-cv-05937-RBL<br><br>ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND PLAINTIFF'S CROSS-MOTION TO COMPEL AND FOR SANCTIONS<br><br>DKT. ## 21 & 25 |

**INTRODUCTION**

THIS MATTER is before the Court on Defendants Joel Sacks, Heather Normoyle, and Elizabeth Smith's (collectively "the Department") Motion for Protective Order [Dkt. # 21] and Plaintiff Freedom Foundation's Motion to Compel and for Sanctions [Dkt. # 25]. Freedom Foundation is an organization that opposes unionization and was present at the Washington State Department of Labor & Industries on June 27, 2019 handing out pamphlets. Employees of the Department asked them to leave, which precipitated this lawsuit based on alleged free speech and other constitutional violations. The parties now dispute discovery served upon Normoyle and

Smith, which the Department argues is duplicative and burdensome but which Freedom Foundation asserts is legitimate. For the following reasons, the Court GRANTS the Department's Motion and DENIES Freedom Foundation's Motion.

**BACKGROUND**

**1.     Freedom Foundation's Claims**

On June 27, 2019, three Freedom Foundation canvassers went to the Washington State Department of Labor & Industries building "to inform public-sector workers of their First Amendment rights, as recognized by the Supreme Court of the United States in *Janus v. AFSCME*, to refrain from or cease financially supporting their respective unions, allowing the unions to speak for them, or associating with their unions against their will." First Amended Complaint, Dkt. # 16, at 4-5. Freedom Foundation alleges that its employees got permission from the front desk receptionist and a state patrol officer to canvas inside the building. *Id*. at 6-7.

They were handing out pamphlets in the "space outside the cafeteria" when they were approached Normoyle, the Assistant Director of Human Resources for the Department; Smith, Deputy Director of the Department; and three to five state patrol officers "acting at the behest of" the Department employees. *Id*. at 8. Normoyle asked if the canvassers had submitted an application for their activities, and when they responded that they had not, Normoyle informed them that they were in contravention of Department Policy 5.04 and asked them to leave. *Id*. at 8-9. Freedom Foundation also alleges that one of its canvassers was taking pictures, and one of the officers aggressively told him to stop. *Id*. at 9-10. The canvassers left the building shortly after. *Id*. at 10.

Based on this altercation, Freedom Foundation assert six claims. The first five allege Due Process, Equal Protection, Free Speech, and Freedom of Association violations arising from the

discriminatory ejection and silencing of the canvassers, as well as one claim arising from the officer's attempt to prohibit photography. *Id*. at 13-22. The sixth claim is for declaratory and injunctive relief. *Id*. at 22. The claims are either against all the Defendants or the Department alone; none of the claims target the conduct of Normoyle and Smith insofar as it differs from that of the Department. In fact, their names are not mentioned once in Freedom Foundation's claims.

**2.     Freedom Foundation's Discovery to the Department, Normoyle, and Smith**

On January 8, 2020, Freedom Foundation served its first set of discovery to Sacks, who is synonymous with the Department in this case. It included 25 requests for admission (RFA) and 25 interrogatories and requests for production (RFP). The Department raised various objections, including that several questions were compound, but ultimately responded and produced "nearly 12,000 pages of records." Motion, Dkt. # 21, at 4. However, after the parties exchanged emails about some of the Department's objections, Freedom Foundation served additional RFAs and interrogatories and RFPs to Defendants Normoyle and Smith.

The RFAs to Normoyle and Smith seek the same information as those directed to the Department. Some also equate the Department's knowledge with that of its employees. For example, RFA number 17 to the Department states, "Admit that on June 27, 2019, the Washington State Patrol officers who accompanied Ms. Heather Normoyle and Ms. Elizabeth Smith in ejecting the Foundation's employees from the Tumwater Building were acting pursuant to the instructions or direction of the Department," Dkt. # 22-1 at 83; there are identical RFAs directed to Normoyle and Smith, but the phrase "instructions or direction of the Department" is replaced with "Your instructions." *Id*. at 7, 47. Other RFAs to the Department address the actions or knowledge of Normoyle and Smith, while the corresponding RFAs to Normoyle and Smith address the exact same subject matter. *See, e.g., id.* at 9, 49 ("You knew that Policy 5.04

1  provided no authority . . . ."); *id.* at 85 ("Ms. Heather Normoyle . . . [and] Ms. Elizabeth Smith
2  knew that Policy 5.04 provided no authority . . . ."). The Department's response to the RFAs
3  contains answers from all "Defendants" and provides information about the actions and beliefs
4  of Normoyle and Smith. *Id*. at 76-86.

5  The interrogatories and requests for production propounded upon the Department, which
6  address a variety of topics, seemingly differ from those directed to Normoyle and Smith, which
7  exclusively ask for factual and documentary support for each RFA answer. *Compare* Dkt. # 22-1
8  at 92-125 *with id.* at 17-35, 57-72. However, interrogatory number 22 to the Department reads,
9  "Please identify and describe with particularity, in accordance with the foregoing Definitions, all
10 factual support for Your denial of any of the Requests for Admissions served to You in this
11 matter, at any time." *Id*. at 122. Because the RFAs to the Department are the same as those
12 directed to Normoyle and Smith, this question encompasses *all* of the interrogatories and RFPs
13 directed to Normoyle and Smith.

14 The Department objected to interrogatory number 22 as compound and stated that "the
15 factual support for the positions taken with respect to the denial of Requests for Admission is
16 included in the response to those requests." Dkt. # 22-1 at 122. The Department's response to the
17 Interrogatories and RFPs is signed and verified by Normoyle. *Id*. at 127. In an email exchange,
18 counsel for Freedom Foundation agreed that question number 22 was compound but suggested
19 that he had a plan to "circumvent" this issue. *Id*. at 133. This plan, apparently, was to propound
20 separate discovery on Normoyle and Smith, despite the overlap between the RFAs to the
21 Department.

|   |   |
|---|---|
| 1 | **DISCUSSION** |
| 2 | The Department argues that Freedom Foundation's discovery to Normoyle and Smith is |
| 3 | improper because they are only "nominally separate" from the Department itself. Alternatively, |
| 4 | The Department contends that the same discovery is unreasonably duplicative, cumulative, and |
| 5 | burdensome. Consequently, the Department asks that the challenged discovery be quashed and |
| 6 | that the Court issue a protective order that Defendants are to be treated in a unitary fashion for |
| 7 | purposes of discovery. Freedom Foundation argues that its discovery approach is legitimate and |
| 8 | that the Court should compel responses from Normoyle and Smith. Freedom Foundation makes |
| 9 | little-to-no argument for why sanctions are warranted. |
| 10 | Rule 26(b)(1) states that parties may obtain discovery on "any nonprivileged matter that |
| 11 | is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, discovery also |
| 12 | must be "proportional to the needs of the case, considering the importance of the issues at stake |
| 13 | in the action, the amount in controversy, the parties' relative access to relevant information, the |
| 14 | parties' resources, the importance of the discovery in resolving the issues, and whether the |
| 15 | burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Rule 26(c)(1) |
| 16 | states that "a party from whom discovery is sought" may, after a good faith conference, seek "an |
| 17 | order to protect [that] party or person from annoyance, embarrassment, oppression, or undue |
| 18 | burden." When a party so moves, "the court must limit the frequency or extent of discovery [if it] |
| 19 | is unreasonably cumulative or duplicative, or can be obtained from some other source that is |
| 20 | more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). |
| 21 | While Rule 33(a)(1) allows up to 25 interrogatories to be served upon each party, some |
| 22 | courts have observed that multiple parties on the same side may be treated as one if they are only |
| 23 | "nominally separate." *See, e.g., Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) |
| 24 |   |

(citing Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1 at 261 (2d ed.1994)). In *Vinton v. Adam Aircraft Indus., Inc.*, for example, the court upheld the magistrate judge's limitation of interrogatories when the plaintiff had taken the position that the corporate defendant and one of its representatives were alter egos and should be "treated as a single, unified entity." 232 F.R.D. 650, 664 (D. Colo. 2005); *but see 21X Capital Ltd. v. Werra*, No. C06-04135 JW (HRL), 2007 WL 2852367, at *1 (N.D. Cal. Oct. 2, 2007) (considering the nominally separate doctrine but declining to apply it because the alter ego company was not a party). *Gucci Am., Inc. v. Exclusive Imports Int'l* reached the same conclusion where the defendants were "acting in unison and are represented by the same counsel." No. 99 CIV.11490 RCC FM, 2002 WL 1870293, at *5 (S.D.N.Y. Aug. 13, 2002).

   Whether the Court relies on Rule 26's prohibition of overly burdensome discovery or the nominally separate doctrine, additional discovery to Normoyle and Smith is unwarranted. The RFAs to Normoyle and Smith seek the exact same information as those to the Department, which were answered by the Defendants collectively. The Interrogatories and RFPs seek the "factual support" related to the RFAs, but the Department stated in its response to the prior discovery that such information was already included in its answers to the RFAs themselves. By affirming that those answers comprise the "factual support" requested in the interrogatories, the Department incorporated that information into its response. There is no need to waste more time, effort, and paper just so Normoyle and Smith can repeat the same information again.

   Further, Defendants in this matter are so closely associated that an additional quota for discovery to Normoyle and Smith is unjustified. Nowhere in its claims does Freedom Foundation distinguish between acts of the Department and those of Normoyle and Smith. FAC, Dkt. # 16, at 13-25. Instead, the Complaint consistently refers to "Defendants" as a single unit, treating

Normoyle and Smith as mere vessels of the Department policy at the heart of this case.[1] *Id.; see also* RFAs to Department, Dkt. # 22-1 at 78-79 (asserting Normoyle and Smith "relied upon Policy 5.04" when they asked the canvassers to leave). Defendants also share common counsel (the result of an AG investigation concluding that Normoyle and Smith acted pursuant to their employment duties) and have acted in unison during this litigation. The discovery propounded upon Normoyle and Smith further underscores their association with the Department by requesting no unique information pertaining to them individually. In light of all this, the separation between Defendants is only nominal.

Freedom Foundation seems to believe that, by propounding separate discovery on each individual Defendant, it will obtain responses that are inconsistent with those of the Department, creating an opportunity for impeachment. Indeed, Freedom Foundation's description of its discovery to Normoyle and Smith as seeking "individual witnesses' verification of the Department's factual position" suggests that this is its main goal. Opposition, Dkt. # 25, at 12. But this is misguided. Defendants all have the same legal representation and are all high-level directors at the Department who participated in the responses to Freedom Foundation's earlier discovery. When the exact same questions are being posed twice, the chance that Normoyle and Smith would suddenly deviate from the answers provided previously is so slim as to be outweighed by the additional burden imposed on Defendants. If Freedom Foundation wants fodder for impeachment, it would have a much better chance of obtaining it through depositions.

Freedom Foundation also argues that suing Normoyle and Smith in their individual capacities "introduces a slew of issues pertaining to whether they are entitled to qualified

---

[1] The only actors that are identified separately are the patrol officers that allegedly prohibited photography, but Freedom Foundation still claims they acted "with the approval of the Department." FAC, Dkt. # 16, at 18.

immunity." Opposition, Dkt. # 25, at 7. But, as the Department points out, "[t]he reasonableness inquiry [for purposes of qualified immunity] is objective, evaluating 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Peltier v. Sacks*, 328 F. Supp. 3d 1170, 1182 (W.D. Wash. 2018) (quoting *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011)). It does not turn on subjective, individualized belief.

In short, this case is about the Department's policy, not Normoyle and Smith's individual actions. Freedom Foundation's claims rely on Defendants acting under Department authority, its discovery treats Defendants as a single unit with shared knowledge, and Defendants have acted collectively in defending this lawsuit. It is therefore duplicative and unduly burdensome for Freedom Foundation to propound additional discovery on Normoyle and Smith.

## CONCLUSION

The Department's Motion is GRANTED and Freedom Foundation's Motion is DENIED. The discovery to Normoyle and Smith is quashed and Defendants shall be treated in a unitary fashion for purposes of discovery going forward.[2]

IT IS SO ORDERED.

Dated this 20th day of April, 2020.

Ronald B. Leighton
United States District Judge

---

[2] The Court notes, however, that this Order does not limit Freedom Foundation's ability to depose each Defendant separately.