HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FREEDOM FOUNDATION,<br><br>               Plaintiff,<br>    v.<br><br>DEPARTMENT OF LABOR & INDUSTRIES, et al.,<br><br>               Defendant. | CASE NO. 19-cv-05937-RBL<br><br>ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY |

## INTRODUCTION

THIS MATTER is before the Court on Plaintiff Freedom Foundation's Motion to Compel Discovery. Dkt. # 33. On June 27, 2019, several Freedom Foundation employees were canvassing inside the Washington Department of Labor & Industries building when they were asked to leave by representatives of the Department; Freedom Foundation sued to challenge the constitutionality of this action and Policy 5.04, which the Department cited in support. The Department initially responded to Freedom Foundation's First Set of Interrogatories and Requests for Production on February 7, 2020. Freedom Foundation now challenges several of the Department's answers.

## DISCUSSION

Rule 26(b)(1) states that parties may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, discovery also must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. A party may move to compel discovery after certifying their good-faith attempt to resolve the dispute with the other party. Fed. R. Civ. P. 37(a)(1). "Although the party seeking to compel discovery has the burden of establishing that its requests are relevant, *see* Fed. R. Civ. P. 26(b)(1), '[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections' with competent evidence." *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (quoting *Blemaster v. Sabo*, No. 2:16-CV-04557 JWS, 2017 WL 4843241, at *1 (D. Ariz. Oct. 25, 2017)).

**1.     Interrogatory/Request for Production No. 5**

Freedom Foundation first seeks to compel production of documents related to its fifth interrogatory—specifically, documents related to purported revisions to Policy 5.04. Interrogatory No. 5 reads as follows:

> For the period of 2010 to the present, please identify and describe with particularity, in accordance with the foregoing Definitions, all policies relating to non-governmental individuals' or entities' use of the publicly-accessible portions of Your Tumwater Building, including, but not limited to the 1st Floor Rotunda and space outside the 2nd Floor Cafeteria, and/or any document(s) or memoranda relating to, referencing, or evidencing such policies, including when such policies were adopted or altered, and the reasons for adopting or altering such policies.

Dkt. # 34, Ex. 1, at 9.

The Department initially objected to the question as unduly burdensome, vague, and overbroad. *Id*. at 10. However, the Department provided a partial response that included the following statement: "L&I is also revising the space use in the Rotunda as it relates to the process and expectations for reserving and utilizing space in the open areas of the Rotunda as well as identifying specific areas that are available for reservation. The use of this space would still fall under the existing conditions of Policy 5.04." *Id*. In its supplemental responses, the Department added, "To the extent Plaintiff is requesting records relating to any contemplated or proposed revisions, Defendants will not provide such documents, which would unduly interfere with the agency's deliberative process, because such records are irrelevant to events that occurred under the present policy, and also because many if not all of such records are privileged and/or attorney work product." *Id*. at 11.

In its Motion, Freedom Foundation stitches the Department's responses into a theory that "the decision has already been made to 'revise the space use in the Rotunda,' and apply Policy 5.04 to that space, so any 'contemplated or proposed revisions' are merely implementing that decision." Motion, Dkt. # 33, at 7. This is a clear distortion of the Department's response, which specifically stated that Policy 5.04 already applies to the Rotunda. However, Freedom Foundation also points to a July 2019 email disclosed pursuant to a FOIA request. *Id*. In that email, an L&I employee discusses developing a "set of guidelines for the use of the space in front of the 2nd floor terrace, and the Rotunda first floor" in order to "set up calendars for these two spaces that can be reserved by anyone" and "make sure any requests for use of that space authorized per [L&I's] Facilities Use Policy 5.04." Dkt. # 34, Ex. 15. Freedom Foundation argues that this revision, whatever it is, must be explored through discovery. It further asserts that the Department waived the deliberative process privilege and that, in any case, the privilege

does not apply or is overcome. *See N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

The Department contends that Freedom Foundation mischaracterizes the proposed revision and, more importantly, any post-June 2019 revisions to Policy 5.04 are irrelevant to this case because they were not in effect at the time Freedom Foundation visited the L&I building. If documents related to future revisions are otherwise discoverable, the Department argues that they fall under the deliberative process privilege and should be reviewed *in camera* by the Court.

First, the Court rejects Freedom Foundation's argument that the Department's objections were so vague as to constitute waiver. Second, although Freedom Foundation should have certified that it met and conferred with the Department about this specific dispute before filing a motion, the parties did correspond about Freedom Foundation's interrogatories and discussed the proposed revisions to Policy 5.04. Dkt. # 34, Ex. 9, at 1, 2-3. The Court will therefore consider the merits of Freedom Foundation's argument.

Freedom Foundation's theory of relevance is confusing. It seems to assert both that the Department is withholding some kind of shadow policy that was in effect in June 2019 and that the Department's proposed revisions were a response to this lawsuit and could shed light on the agency's position that groups can reserve the spaces in its building. While the former idea is unsupported by any evidence or statements by the Department, the latter is hard for the Court to address without knowing what the planned revisions are. If the Department is developing reservation procedures for the first time, that could undermine its contention that Freedom Foundation could and should have applied to use its space. If the proposed revisions are relevant, the Court will also need to review documents to determine if the deliberative process privilege applies. *California Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 410 (N.D. Cal. 2008) ("In

camera review is an appropriate method for courts to consider the applicability of the deliberative process privilege."). The Department is therefore ordered to provide documents related to any revisions to Policy 5.04 to the Court for *in camera* review.

**3.    Interrogatories No. 6 & 9**

Freedom Foundation next seeks to compel responses to Interrogatory No. 6, which seeks "every communication" between L&I employees and Freedom Foundation since January 1, 2015, and Interrogatory No. 9, which seeks all documents and communications between L&I employees and other parties "relating or referring to the Freedom Foundation" or its employees. Dkt. # 34, Ex. 1, at 11 & 17. Freedom Foundation argues that these communications are relevant to its claims of viewpoint discrimination.

To the extent Freedom Foundation's interrogatory seeks descriptions of oral communications by the Department's over 3,000 employees, the Department objected to the request as unduly burdensome and irrelevant. As the Department explains, L&I employees other than those named in the lawsuit could not have impacted the decision to eject the Freedom Foundation employees in June 2019. the Department states that it has already produced physical documents responsive to Interrogatory No. 6 and is in the process of collecting documents responsive to Interrogatory No. 9.

The Court agrees with the Department that it is not required to survey all its employees and then draft written descriptions of their oral communications. The tenuous theory of relevance for such information—that it could prove a culture of antipathy toward Freedom Foundation at L&I—hardly justifies the massive burden it would impose. the Department's reasonable efforts to collect physical communications, communications by the named Defendants, and communications related to the June 2019 incident are sufficient. Further efforts would be overly

burdensome and out of proportion to the needs of the case.[1] However, the Department is required to live up to its representations and produce the written communications it is currently gathering.

**4.     Interrogatories No. 14-17**

These interrogatories seek explanations for some of the Department's answers to Freedom Foundation's Complaint. the Department answered these interrogatories but objected to them insofar as they called for "legal conclusion[s]." Dkt. # 34, Ex. 1, at 25. the Department argues that it provided complete answers to these interrogatories and merely wished to preserve objections in case Freedom Foundation challenged its answers later as incomplete. Freedom Foundation contends that the Department's objections have no basis and were waived when it nonetheless responded. As such, Freedom Foundation asks the Court to overrule the objections.

Motions to compel must seek to *compel* something—"an answer, designation, production, or inspection." Fed. R. Civ. P. 37(b). They are not for wasting judicial resources on abstract challenges to objections when the movant expresses no issue with the party's substantive responses.[2] The Court will not address this aspect of Freedom Foundation's Motion.

---

[1] The Court notes that L&I seems to have agreed to respond to Interrogatory No. 9 by searching for all written communications by L&I employees within the scope of their employment. Dkt. # 34, Ex. 1, at 18. However, Freedom Foundation's Motion implies that L&I refuses to produce any documents at all and will not even do a "mere keyword search." Dkt. # 33 at 9. This dispute seems to be based on a misconception by Freedom Foundation.

[2] The only interrogatory the Department did not answer asked why the Department denied the allegation that the L&I Rotunda area where Freedom Foundation employees canvassed is a public forum. Dkt. # 34, Ex. 1, at 28. This question essentially asked for legal conclusion on one of the central constitutional issues of this case. It does not merely ask for the "application of law to fact," but instead impermissibly seeks "admission of a conclusion of law." *Jones v. Nutiva, Inc.*, No. 316CV00711HSGKAW, 2016 WL 5900722, at *2 (N.D. Cal. Oct. 11, 2016). The Department's objection is justified. *See People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 435 (N.D. Cal. 1955) (interrogatories may not seek the "legal conclusions upon which [the opposing party] hopes to base a part of his case in the trial of this controversy").

The Court must mention that, while Freedom Foundation decided it was worth litigating a single objection in discovery answers that it otherwise found substantively acceptable, its own approach to discovery in this case has been stonewalling. *See* Order on Defendants' Motion to Compel Discovery, Dkt. # 43. As the Court stressed in its previous Order, the parties should act reasonably in interpreting and responding to discovery. Answering an interrogatory while preserving an objection is far more reasonable than refusing to answer at all based on generalized objections.

**5.      Interrogatory No. 16**

Finally, Freedom Foundation challenges the Department's vagueness and overbreadth objection to Interrogatory No. 16, which states:

> Please identify and describe with particularity, in accordance with the foregoing Definitions, the principal and/or material factual support for your denial, in paragraph 72 of the Answer, of the allegation that "…other groups whose message is favored by the Department, including, but not limited to WFSE/AFSCME Council 28 have not been required to obtain a permit before conducting First Amendment activities in the publicly accessible areas of L&I's Tumwater Building, and have not been ejected from the building for conducting such activities."

Dkt. # 34, Ex. 1, at 27.

The Department objected to the terms "First Amendment activities" and "groups" as overly broad and vague. *Id*. It construed the former to "encompass advocacy activities similar to the activities Plaintiff attempted to engage in on June 27, 2019" and pointed out that the latter term "failed to distinguish between Department or employee groups and groups otherwise directly relating to the Department's functions and outside groups." *Id*. the Department answered the interrogatory by stating that, "upon information and belief, L&I had no formal or informal policy or position 'favoring' or 'disfavoring' particular political or advocacy groups. . . . Use of the publicly accessible spaces in the Building for political advocacy events requires advance

notice from the individual(s) or group(s) seeking to use the space, and approval for such use, and this policy has been consistently enforced." *Id*. at 27-28.

Freedom Foundation argues that it "is entitled to know the extent of expressive activities the union was permitted to hold at the Tumwater building, and when union representatives were, or were not, required by the Department to seek or obtain a permit pursuant to Policy 5.04 for those activities." Dkt. # 33 at 11. The Department responds that Freedom Foundation is attempting to change its own interrogatory, which merely asked why the Department denied that particular allegation in the complaint. Further, the Department contends that the broadest-possible definition of "First Amendment activities" would encompass almost anything, including a visitor asking the receptionist where the bathroom is located.

While the Court agrees that Freedom Foundation's characterization of this interrogatory deviates somewhat from the original, the Department's construal of "First Amendment activities" and "groups" is overly narrow. "First Amendment activities" is indeed a sweeping term that encompasses speech related and unrelated to context-specific business or operations. *See Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (explaining that the term "First Amendment activities" encompasses "the universe of expressive activity"). But limiting the term to "advocacy activities similar" to those of Freedom Foundation is excessively restrictive. Freedom Foundation believes its own expression is no different from that of WFSE and other unions. Rather than artificially narrowing the terms in the allegation to "political advocacy" expression and groups similar to Freedom Foundation, the Department should construe the terms broadly enough to encompass the diversity of speech that groups may use the public spaces at L&I to engage in. This will help define the contours of the Department's enforcement of Policy 5.04 and move this case forward.

# CONCLUSION

The Department is ORDERED to provide documents related to any revisions to Policy 5.04 to the Court for *in camera* review within 21 days of this Order. Freedom Foundation's Motion is also GRANTED with respect to Interrogatory No. 16 insofar as the Department give the terms "First Amendment activities" and "groups" broader definitions. The rest of Freedom Foundation's Motion, including its request for sanctions and attorney fees, is DENIED.

Finally, the Court must note that Freedom Foundation should refrain from using page-long footnotes as a method of circumventing the page limitations of Local Civil Rule 7(e). The Court will not consider arguments made in this manner.

IT IS SO ORDERED.

Dated this 19th day of June, 2020.

Ronald B. Leighton
United States District Judge